Michael R. Spaan, Esq.
mspaan@pattonboggs.com
PATTON BOGGS LLP
601 West Fifth Avenue, Suite 700
Anchorage, Alaska  99501
Telephone:  907-263-6300
Facsimile:  907-263-6345

*Attorneys for Ralph E. Whitmore, Jr.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RALPH E. WHITMORE, JR.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) No. 3:94-cr-00136-HRH |

**MEMORANDUM IN SUPPORT OF MOTION TO
MODIFY RESTITUTION ORDER AND FOR
EARLY TERMINATION OF SUPERVISED RELEASE**

**INTRODUCTION**

Defendant Ralph Whitmore has moved this Court to modify the Restitution Order on the grounds that his restitution obligation has been successfully fulfilled by virtue of satisfaction of all obligations under a Settlement Agreement with the Federal Deposit Insurance Corporation ("FDIC").  Alternatively, Whitmore moves to modify the Restitution Order on the basis that his financial circumstances have changed since sentencing in a manner that warrants the requested reduction in restitution.  Mr. Whitmore also asks that the term of his supervised release be terminated early if this Court finds that Whitmore has satisfied his restitution obligations in full.

48898v5

## STATEMENT OF THE CASE

### I. FACTUAL BACKGROUND

On December 16, 1999, Whitmore was convicted on counts of bank fraud, false entries in books or records, and misapplication. Simultaneously, the FDIC had pending civil claims against Mr. Whitmore and his wife arising out of the same series of events. FDIC v. Whitmore, et al., Case No. A92-060 Civ (HRH). Prior to his scheduled April 28,th 2000 criminal sentencing, Judge Holland asked both the U.S. Attorney and FDIC's civil attorneys to meet and confer and to then advise him as to whether the issues of restitution and damages would best be resolved in the civil or the criminal case. Clerk's Docket No. 913.

On February 24, 2000, Assistant U.S. Attorney Karen Loeffler and FDIC Attorney James Leik submitted to Judge Holland a "Joint Report of the FDIC and the United States in Response to Court's Order Re: FDIC Restitution Claims." Clerk's Docket No. 917, attached hereto as Exhibit A. In that Report, the United States and the FDIC stated that they had reached a "joint figure for the starting point for civil damages and restitution already calculated." [Exhibit A at 4.] However, neither the United States nor the FDIC was willing to have judgment entered for damages/restitution in the other party's case because of some significant *procedural* differences between the civil and criminal proceedings.[1]

The parties, therefore, jointly recommended that Whitmore's restitution/civil damages amount be calculated in the same hearing. Id. at 4. However, to avoid double payment the

---

[1] For example, the defendant's ability to repay is an issue under a criminal restitution order, but not under a civil judgment. Under the civil case, the FDIC would be entitled to prejudgment interest; it may or may not have been so entitled in a criminal proceeding. The tools for enforcement in a criminal proceeding are broader and stronger than in a civil proceeding and there are certain exemptions applicable to civil judgments that do not apply to restitution orders. [Exhibit A at 4, 5.]

"FDIC and the United States also agree that any payments made in restitution or upon collection of the civil judgment <u>may be credited to both judgments</u>." Id. at 4 (emphasis added). On April 28, 2000, Whitmore was sentenced to two years in jail and ordered to make restitution of $500,000 to the FDIC. Clerk's Docket No. 958, attached hereto as Exhibit B.

Thereafter, on April 24, 2002, the FDIC and the Whitmores entered into a Settlement and Release Agreement wherein they agreed to resolve all claims and issues in the civil action in exchange for Whitmore's payment of $250,000, plus an additional payment based on the net proceeds from the sale of drilling pipe, which was the Whitmores' only remaining asset.[2] [Exhibit C.] In that Settlement Agreement, the FDIC provided that, "upon complete performance of all obligations" under this Agreement:

> c. Mr. Whitmore may move the Court for modification of the restitution order in <u>United States v. Whitmore</u> to deem his restitution obligation satisfied by virtue of performance of the obligations set forth in this Agreement. While it is understood that the FDIC cannot bind the United States Attorney or the Court, the FDIC agrees not to object or seek to prevent the granting of such a motion, and Mr. Whitmore may represent to the Court that the FDIC does not object to an order granting such a motion. Mr. Whitmore may advise the Court of the terms of this Agreement after he has agreed to and signed the Agreement.

Id. at 6, 7. The Court approved the Settlement Agreement. [Exhibit D.]

---

[2] After the Settlement Agreement was signed and approved by the Court, Mr. Whitmore's only job was to sell this pipe and fulfill his obligation to the FDIC. During the time period after the settlement agreement was signed, market conditions made it very difficult to sell the pipe. Although the FDIC could have marketed the pipe itself after a certain date, it never exercised that option. Realizing the skill necessary to market pipe in two foreign countries, they allowed Mr. Whitmore to continue his efforts. [Exhibit C at 2, 3.]

Subsequently, Whitmore performed all obligations under the Settlement Agreement including the payment of $250,000 and an additional payment of $50,000 as a result of the sale of all remaining drilling pipe. Thus, Whitmore's payments pursuant to the Settlement Agreement totaled $300,000. On May 10, 2006 the FDIC filed a motion to dismiss the civil case and dissolve the preliminary injunction as Whitmore had satisfied in full his obligations to the FDIC. [Exhibit E.] The Court dismissed the civil case on May 19, 2006. [Exhibit F.]

Whitmore now moves this Court to modify the restitution order and deem it satisfied in full by virtue of his performance of all obligations under the Settlement Agreement. The FDIC has affirmatively stated that it does not object to the Court granting this Motion. [Exhibit G.] Alternatively, this Court could modify the restitution order on the grounds of Whitmore's changed financial circumstances as detailed below. Finally, Whitmore moves this Court for early termination of his supervised release should this Court conclude that he has satisfied his restitution obligations in full.

## II.    DISCUSSION

### A.    Restitution

In <u>United States v. Miller</u>, 205 F.3d 1098 (9th Cir. 1999), as a matter of first impression, the Ninth Circuit addressed the question of whether a district court has authority under 18 U.S.C. 3583(e)$^3$ to modify a fine that was made a condition of probation. The district court had held

---

$^3$ That statute provides in part:

The court may, after considering the factors set forth in . . . .
- * *
- (2) extend a term of supervised release if less than the maximum authorized term was previously imposed, *and may modify, reduce, or enlarge the conditions of supervised release* . . . (emphasis added).

18 U.S.C. 3583(e) (1999) (emphasis added).

that it lacked jurisdiction to modify a fine that was imposed as part of an already-final sentence. Id. at 1100. The Ninth Circuit, however, reversed the district court's decision relying on the plain language of the statute, which "indicates that the district courts have broad discretion to alter the conditions of a defendant's supervised release." Id. The Ninth Circuit further reasoned that the general "punishment" goals of the sentencing statutes are furthered by allowing modification to account for unforeseen circumstances:

> Occasionally, changed circumstances—for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release—will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a).

Id. at 1101, quoting United States v. Lussier, 104 F.3d 32, 36 (2nd Cir. 1997).

The Miller holding was extended to apply to modification of restitution orders in United States v. Sarvis, 102 F.Supp.2d 514 (D. Vt. 2000). There, a defendant was ordered to pay in excess of $12 million for bank fraud and submitting false statements to a federally-insured banking institution, payable at the rate of 10% of his annual income following incarceration. The defendant sought to modify the amount of restitution because of his changed financial circumstances. Relying on the Miller case, the Second Circuit agreed that the district court had the authority to modify the amount of a fine imposed as a condition of supervised release, and further held that

> "the Miller court's ruling logically applies with equal force to the question of whether section 3582(e)(2) authorizes a court to reduce a restitution order."

Id. at 516. The court further noted that one standard for assessing whether modification is warranted is "whether defendant's financial circumstances have changed since sentencing in a

manner warranting reduction of his restitution order." Id. In making this determination, the court is to consider general punishment issues such as deterrence, public safety, rehabilitation, proportionality, and consistency. 18 U.S.C. 3553(a)(1).

### 1.  Whitmore's Obligation to the FDIC Has Been Fully Satisfied

In 2000, the United States and the FDIC both acknowledged that the FDIC was entitled to both civil damages and restitution based on Mr. Whitmore's criminal convictions. They further agreed that payments made by Whitmore in restitution or in the civil action would "be credited to both judgments." Ex. A, pg. 4. The FDIC necessarily based its April 2002 Settlement Agreement on its assessment of Whitmore's then-existing financial condition.[4] Accordingly, the FDIC agreed that, once Whitmore had satisfied his obligations under the Settlement Agreement, Whitmore could "move the Court for modification of the restitution order in United States v. Whitmore to *deem his restitution obligation satisfied*" and that the FDIC would not object to the granting of such an order. [Exhibit C (emphasis added).] Having satisfied all obligations under his Settlement Agreement with the FDIC, Whitmore so moves the Court to modify his restitution order to deem that all obligations thereunder have been resolved. Attached hereto is the FDIC's confirmation that it has no objection to the modification of the restitution order as requested. [Exhibit G.]

### 2.  Whitmore's Financial Circumstances

If, however, the United States is not inclined to deem the remaining $200,000 restitution obligation satisfied,[5] Whitmore asks this Court to exercise its discretion and modify the

---

[4] In particular, it recognized that the drilling pipe was the only remaining asset likely to generate income with which to pay a civil judgment.

[5] In a good faith attempt to meet his restitution obligations, Whitmore has made several nominal payments out of his social security earnings pursuant to instructions from his probation officer.

Restitution Order on the grounds that his financial circumstances have changed since sentencing in a manner that warrants reduction in the restitution. Whitmore received and served two years incarceration pursuant to the District Court's imposition of sentence.[6] Following his discharge, Whitmore and his wife have attempted to earn a living to the best of their ability, but given their advanced ages (Whitmore is nearly 74 years old and his wife nearly 71 years old) and the fact that they are both battling significant health issues, their earning power is extremely limited. Affidavit of Ralph Whitmore, Jr., attached hereto, at ¶ 3. Whitmore no longer owns assets that could be sold to generate cash. Id. at ¶ 2. He lives in a rented apartment, drives a 1994 vehicle, and otherwise does not live an extravagant lifestyle. Id. at ¶2. His earning potential, over and above the amount necessary to support his basic living expenses, is not likely to result in his ability to pay anything more than what he has already paid to the FDIC. Currently, Whitmore's liabilities exceed his assets. Id.

Accordingly, Whitmore asks this Court to deem his restitution obligation satisfied in full based on his fulfillment of all obligations under the Settlement Agreement and/or based upon his changed financial circumstances.

### B.    Supervised Release

Should this Court grant Mr. Whitmore's motion and modify the restitution order to deem it fully satisfied, Whitmore futher requests an early termination of supervised release.[7] 18 USC § 3564(c) allows a court to discharge a defendant at any time "after the expiration of one year of probation in the case of a felony, if it is satisfied that such action is warranted by the conduct of

---

[6] Whitmore was released on April 26, 2005. See Exhibit H.
[7] While some counsel would no doubt argue that this Court should terminate the supervised release conditions irrespective of its ruling on the restitution the undersigned does not. If in fact

the defendant and the interest of justice."[8]  When determining whether such discharge is warranted, the court, in the exercise of its sound discretion,[9] is directed to consider several factors[10] including the 1) nature and circumstances of the offense and the characteristics of the defendant, 2) the need for sentence to be imposed, and 3) the need to provide restitution to the victims of the offense.

### 1. Nature and Circumstances of Offense/History and Characteristics of the Defendant

This Court and the United States are both intimately familiar with the offense.  Each sat through two trials of Mr. Whitmore and heard the evidence.  In summary, Mr. Whitmore was convicted of banking crimes, was imprisoned for two years, served his sentence and satisfied his obligations in the civil case with the FDIC.  This Court should find he has also satisfied his obligation under the Restitution Order.

The Court, when it sentenced Mr. Whitmore, was familiar with Mr. Whitmore's personal characteristics.  The Court heard at sentencing that this was his first misstep after many years as a successful businessman.  The Court also found at sentencing that the case was atypical because Mr. Whitmore was motivated by his desire to save, not destroy, the Alaska State Bank.[11]  When the Court sentenced Mr. Whitmore it found in its statement of reasons for the sentence that:

> This is not a 'heartland' case.  Defendant is past retirement and has multiple serious medical problems.  Defendant's earning capacity has been drastically reduced by charges and conviction.  Imprisonment on this defendant will be more onerous than the average prisoner.

---

it is determined that Mr. Whitmore has a continuing obligation to make restitution, it is appropriate that he remain on supervised release.
[8] Mr. Whitmore began his term of supervised release on April 26, 2005.  [Exhibit H.]
[9] See State v. Caruso, 241 F. Supp. 2d 466, 465 (DNJ 2003).
[10] The statute directs the Court to review the factors set forth in 18 USC § 3553(a).
[11] This conclusion was affirmed by the Ninth Circuit Court of Appeals in a memorandum opinion.  United States v. Whitmore, February 11, 2002.  [Exhibit I.]

[Exhibit B, Statement of Reasons.]

Those words expressed the Court's findings six years ago. Nothing has happened to alter the Court's findings other than the fact that in the six years that have passed, Mr. Whitmore is six years older, his health has not improved[12], and, although he must continue to work, his earning capacity is not bright.

Mr. Whitmore has done everything that society expected of him. He served his time as a model prisoner without incident. At all times, he has met with his probation officer as required in one of the longest running cases in this District. He also worked diligently to sell his only remaining asset, the drilling pipe, in order to satisfy his obligations to the FDIC.

### 2.    Need for Sentence Imposed

Mr. Whitmore has been punished for his offense. He has served his time and repaid his victim to the best of his ability. To be released early from supervised release will not diminish the deterrent factor against breaking the laws of the United States.

### 3.    Need to Provide Restitution to Victims of the Offense

As s set forth previously, Whitmore's obligations to the FDIC have been satisfied in full, and the FDIC has written a letter stating its non-opposition to the Motion to Modify the Restitution Order. As the case caption above shows, this case is over twelve years old, though several years of investigation no doubt preceded its filing. It is time to finally bring it to an end. There is no persuasive reason not to terminate Mr. Whitmore's supervised release early if this Court rules the restitution obligation to the FDIC is satisfied.

---

[12] When Mr. Whitmore was in custody he had to be med-evaced by jet, accompanied by a physician and a nurse, to Mayo Clinic for a cancer operation.

## CONCLUSION

The Restitution Order should be modified to hold that Mr. Whitmore's restitution obligation has been satisfied based on his settlement with the FDIC.  The FDIC was the victim of Mr. Whitmore's action.  It pursued its remedy by a civil action and, through the United States Attorney's Office, a restitution order.  The goal was to recover one sum but to reserve two alternate means, each with its own advantages, to achieve the one recovery.  The United States and the FDIC evidenced that only one sum was due by informing this Court that a payment to either the restitution of the civil judgment would be credited to both judgments.  [Exhibit A at 4.] The FDIC after carefully examining its losses, its ability to collect, and multiple other considerations agreed to a settlement with Mr. Whitmore in the civil case.  Mr. Whitmore has satisfied the terms of the settlement.  To force Mr. Whitmore to continue "restitution" payments that the FDIC is willing to forego would convert these payments into a criminal fine not contemplated at the Imposition of Sentence over six years ago.  [Exhibits C and G.]

If the restitution is modified to reflect it is satisfied, Mr. Whitmore's term of supervised release should be terminated early.  As the arguments made above demonstrate, there is no legitimate reason not to resolve the dispute between the FDIC and Mr. Whitmore now.

DATED at Anchorage, Alaska this 25th day of May, 2006.

By: s/Michael R. Spaan  
Michael R. Spaan  
PATTON BOGGS LLP  
601 West Fifth Avenue, Suite 700  
Anchorage, Alaska  99501  
Phone: (907) 263-6300  
Fax:  (907) 263-6345  
Email:  mspaan@pattonboggs.com  
Alaska Bar No. 7305026

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of May, 2006, a true and correct copy of the foregoing document was served electronically on:

**Karen Loeffler**
Assistant U.S. Attorney
Office of the United States Attorney
222 W. 7th Avenue, #9
Anchorage, Alaska 99513-7567

By:    s/Gloria Bullock
       Legal Secretary/Assistant
       PATTON BOGGS LLP